Rayles v. Rayles.

---

JACOB RAYLES, APPELLEE, V. ADELIA RAYLES, APPELLANT.

FILED MAY 29, 1912.   No. 16,692.

1. Divorce: ALIMONY. In an action for divorce and alimony, the trial court may consider all the facts in evidence as to the property rights of the parties and render such decree as may be just and equitable, irrespective of the question whether or not a decree in an action between them several years before had settled their property rights up to that time.

2. Evidence examined, and *held* that the decree of divorce and for alimony rendered by the district court is not erroneous.

APPEAL from the district court for Cass county: HARVEY D. TRAVIS, JUDGE. *Affirmed.*

*Byron Clark* and *Sullivan & Squires*, for appellant.

*Matthew Gering* and *Mockett & Peterson*, contra.

LETTON, J.

This is an action for divorce and alimony. A decree

was rendered dissolving the bonds of matrimony, and alimony was awarded defendant in the sum of $1,000. Defendant appeals.

The parties were married in Lancaster county in the year 1891. This was the plaintiff's third venture in the matrimonial field. At the time of this marriage he was about 60 years old. He had one son living, the issue of the first marriage, and two daughters, the issue of the second marriage; all were of full age and married. The defendant at the time of the marriage was about 40 years of age, and was a widow with two minor children. Two children resulted from the marriage with plaintiff, one of whom died before the trial of this case and the other is still living. At the time of the marriage the plaintiff lived in Cass county and the defendant lived in Lancaster county, Nebraska, and after the marriage they took up domestic life at the husband's home. On the day before the marriage the parties entered into an antenuptial contract. It is unnecessary to set this forth *in extenso,* but, in substance, it provided that Rayles should allow the children of Mrs. Ward to live in the home to be provided by him, and that during their minority he should support, maintain, clothe and educate them in the same manner as if they were his own; that he should provide his wife with a home, provide by will or otherwise for her comfort and support after his death; that if there should be any children of the marriage, they should be equal heirs with the children now living and should not be disinherited; and it was further agreed that Mrs. Ward released all her rights, both in law and equity, to all the property that Rayles then had or might thereafter acquire if he should make the provisions for her support and that of her children as contemplated in the agreement; that he should have the right to acquire and convey real estate the same as if the contract of marriage had never been entered into between them, and that she would sign all deeds conveying real estate, and for that purpose she agreed to execute a power of attorney to him authorizing him to execute

such deeds. · On the same day she executed a power of attorney carrying out the provisions of the contract. After the marriage they lived in Cass county a few years, and subsequently moved to Custer county where plaintiff owned a farm.

In 1906 the defendant began a divorce action against the plaintiff in the district court for Custer county. While this action was pending a contract was entered into, signed by the plaintiff and by the defendant's attorney, which recited that the parties had found it impossible to live together as husband and wife, that the husband agreed to convey to his wife certain horses and other personal property, and that the wife should retain certain other specified personal property. He agreed to give her $100 in cash and to convey to her a certain 80 acres of land in Custer county, reserving the granary and other property thereon; and the wife agreed to receive the property described in satisfaction of all interest in the estate of the husband, and, in case there should be a divorce, in satisfaction of all claims for alimony. The agreement also made several other minor stipulations. Afterwards, on June 4, 1906, after certain negotiations with reference to the divorce action then pending, this agreement was ignored and another contract made. This agreement recited that Rayles at that time deeded to his wife the 80 acres referred to in the contract of May 29. Both parties agreed to keep peace in the family, and plaintiff agreed to cease the use of intoxicating liquors to excess. It recited that the wife owned about 30 head of cattle, but at the request of her husband she agreed to dispose of part of the same. She further agreed not to again begin divorce proceedings as long as he behaved himself, and, if compelled to begin such proceedings, then in allowing alimony the land deeded should be taken into consideration by the court. He also agreed to pay her $50 and her attorneys' fees in the divorce suit amounting to $100. The divorce case was then dismissed.

On October 29, the same year, Mrs. Rayles began an-

other divorce suit in Custer county. A cross-petition was filed by Rayles. Before a decree was rendered Rayles executed and delivered to the two children of their marriage, Adelia Rayles, Jr., and Jacob Rayles, Jr., conveyances to three 80-acre tracts of land in Custer county, reserving to himself a life estate therein. The court found against each of them and denied a divorce. It further found that the conveyances made constituted an equitable division of the property to Mrs. Rayles and the two children of the marriage, and ratified and approved the same. It also divided the personal property specifically in the decree, refused to charge maintenance while the parties lived apart, and adjudged that the husband pay the costs. No appeal was taken from this decree. Afterwards, the husband removed to the farm in Cass county, and in May, 1909, filed his petition in that county praying for a divorce on the ground of desertion and cruelty, and setting forth the antenuptial agreement, the contracts between the parties, the Custer county decree, and the division of the property. An answer was filed resisting the divorce, but praying for alimony if the plaintiff be given a divorce and a reply pleading *res adjudicata* and inability to pay alimony.

The defendant complains that the decree of divorce is not sustained by the evidence, and that the amount of alimony is inadequate. On the other hand, by a cross-appeal the plaintiff complains that the court erred in disregarding the antenuptial contract, the subsequent contracts made, and the final decree of the district court for Custer county, and in allowing alimony; and insists that the divorce should stand, but that the decree allowing alimony should be reversed.

We deem it unnecessary and inadvisable to set forth at length the evidence as to the unhappy conditions in this family, extending over a long period of time. It is not an infrequent occurrence that where parties in advanced life, each with a family of children of their own, contract a matrimonial alliance, they, after marriage, find that

their tastes, habits and individual characteristics. have become so settled and fixed by the lapse of years that it is almost impossible for them to yield or modify the same for the comfort and happiness of the other contracting party. Such a situation often requires sacrifices that many are disinclined to make. The only wonder in this case is that they were able to get along as well as they did for as long a period of time as they lived together. It is probably true, as the defendant insists, that it is difficult to distinguish wherein one party was more guilty of cruelty than the other. Apparently both were not free from fault. Considering the fact that in the eye of the law the husband is the head of the family, and that he is vested with the authority and power to fix the domicile, and that, while the evidence is conflicting, there is testimony that when the plaintiff proposed to move from Custer county (where their disputes and jangles had apparently become notorious) and start life anew in another locality the defendant refused to do so, and that when he moved to Cass county the defendant refused to follow him, we think the evidence sustains the decree of divorce. The evidence is by no means strong, but when all the circumstances are considered we think it sufficient.

Upon the question of the amount of alimony: The appellant concedes that, in determining the amount of alimony that should be allowed, the value of the 80 acres conveyed to her should be taken into consideration, but urges that the court should also consider the value of the estate, the plaintiff's annual income, and the extent and value of the defendant's labor in acquiring the property. Plaintiff insists the contracts and decree in Custer county settle these property rights, and that defendant is entitled to nothing further. When the husband left Custer county he owned 160 acres of land in that county in fee and a life estate in the 240 acres conveyed to the children of this marriage. One of the children having died, the plaintiff and the defendant each inherited one-half of his estate, so that plaintiff then owned 220 acres in

Custer county, with a life estate in 180 acres more. On the other hand, the defendant had received 80 acres in Custer county by conveyance from the plaintiff and 60 acres by inheritance from .the deceased son, so that at this time she owns 140 acres of land in Custer county, of which 60 acres is subject to the plaintiff's life estate. It also appears in the testimony that the plaintiff has conveyed the 80 acres in Cass county and the other 160 acres in Custer county to his children by his former marriages, subject to a life estate in himself, so that at the time of the trial the only farm land the plaintiff possessed in fee simple was the 60 acres which he inherited from his deceased son. The deeds are not in evidence, but the plaintiff so testified and the facts seem to be conceded. It appears also that he had been receiving about $2.50 an acre rent, and that he was paying taxes amounting to about $200, as well as paying for improvements and repairs on all the land except that conveyed to his wife. Since leaving Custer county he also purchased a home in the village of Greenwood.

As to plaintiff's contention that the Custer county decree settled the property rights and was final, and that the district court for Cass county was bound thereby, we are of opinion that the district court was entitled to consider the changed conditions at the time of the trial and to award such further relief to the defendant as in equity seemed proper. In the absence of any contract or agreement between the parties, we should be inclined to hold that the award of alimony should be increased to some slight extent, but after considering all the elements in the case, including the several contracts and the division of both real and personal property made in 1906, we are satisfied that the district court made an equitable apportionment, and that neither the appeal of the wife nor the cross-appeal of the husband should be sustained.

For these reasons, the judgment of the district court is

AFFIRMED.